**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS & ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA,                      ) | |
| )                      | |
| Plaintiff,          ) | |
| )                      | Criminal No. 2010-53 |
| v.                ) | |
| )                      | |
| SAKER M. SHALHOUT a/k/a SAKER ) | |
| ZHALHOUT, JAD M. SHALHOUT            ) | |
| Defendants.       ) | |
| _____) | |

**ATTORNEYS:**

**Everard E. Potter**
U.S. Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America.*

**Kim L. Chisholm**
U.S. Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America.*

**Arturo R. Watlington, JR**
Law Offices of Arturo Watlington
St. Thomas, U.S.V.I.
    *For the defendant Jad M. Shalhout*

**Joseph J. Mingolla, II**
Law Offices of Joseph J. Mingolla
St. Thomas, U.S.V.I.
    *For the defendant Jad M. Shalhout.*

**Treston E. Moore**
Moore, Dodson, & Russell, P.C.
St. Thomas, U.S.V.I.
    *For the defendant Saker M. Shalhout.*

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 2

**Gordon C. Rhea**
Richardson, Patrick, Westbrook & Brickman, LLC
Mount Pleasant, S.C.
        *For the defendant Jad M. Shalhout.*

<u>**MEMORANDUM OPINION**</u>

Before the Court is the motion of Jad Shalhout for a

judgment of acquittal.  Saker Shalhout joins in the motion.

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

On October 7, 2010 the Grand Jury returned an indictment

against Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad

("Samad").  Thereafter, on January 13, 2011, the Grand Jury

returned a superseding indictment against the defendants.  Count

one charged Jad Shalhout, Saker Shalhout, and Mohannad Abdel-

Samad, with conspiracy to commit wire fraud in violation of Title

18 U.S.C. § 1343 and 1349.  Counts two through forty-three

charged Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad

with wire fraud in violation of Title 18 U.S.C. § 1343.  Count

forty-four charged Jad Shalhout, Saker Shalhout, and Mohannad

Abdel-Samad with conspiracy to money launder.[1] Counts forty-eight

and forty-nine charged Jad Shalhout with money laundering in

violation of Title 18 U.S.C. § 1956(a)(1)(B)(i).  Mohannad Abdel-

Samad entered a guilty plea on February 25, 2011.

---

        [1] At trial, the Court granted Jad Shalhout and Saker Shalhout's Rule 29
motion as to Count 44, conspiracy to commit money laundering.  (Tr. Day 2,
296-297).

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 3

At trial, the government presented evidence indicating that beginning in August 2008, through January 2009, American Express Cards ending in 62006, 61007[2], 61016, 42007[3], and 51011 were used at Four Seasons Farms, Inc., a grocery store. The prosecution presented testimony establishing that the charges were conducted "off-line" and bypassed the credit authorization system of American Express.  Credit cards 62006 and 61007 belonged to Saker Shalhout and Vinicia Jewelry, respectively. (Tr. Day 1, 176:20; 178:16-19; 106:25; 107:12-15).  Credit card 42007 belonged to Jad Shalhout. (Tr. Day 1, 181:11-12). Credit Card 61016 belonged to Manal Shalhout. (Tr. Day 1, 178:16-19).  Credit Card 51011 belonged to Kendy Javier.  (Tr. Day 1, 148:20-25; 149:1-4).

The credit card statements showed that the above credit cards were being used at Four Seasons Farm to purchase large quantities of goods on a daily basis for several months. However, trial testimony and evidence established there was no exchange of goods. The transactions totaled in excess of a

---

[2] Garcia Castro ("Castro) the manager for Credit Operations from American Express testified that this card was cancelled and sent to credit reserve in February of 2008. (Tr. Day 1, 106:25-107:3).  Castro testified that this card had been sent to credit reserve because the amounts could not be recovered by the accounting department.

[3] Garcia Castro ("Castro) the manager for Credit Operations from American Express testified that this card was cancelled and sent to credit reserve. (Tr. Day 1, 108:4-20). Castro testified that this card had been sent to credit reserve because the amounts could not be recovered by the accounting department.

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 4

million dollars.

Samad testified to the contours of the scheme.  He testified that Jad Shalhout showed him how to charge cancelled credit cards on the Four Seasons Farm credit card machine.  He further testified that Saker Shalhout supplied him with the credit cards. Samad also testified that he and Saker Shalhout conducted most of the off-line transactions.  He stated that the purpose of charging the credit cards was to borrow money off the cancelled credit cards.  At trial, Samad stated that after he received the cash proceeds from the transactions in the Four Seasons bank account, he would forward the money to Saker Shalhout by writing a check to him.

Jamil Daboub ("Daboub") testified that he sent Saker Shalhout an American Express credit card issued to Kendy Javier, Daboub's wife at the time.  He testified that in exchange for Kendy Javier's American Express card, Saker Shalhout agreed to settle a debt between them and also agreed to send Daboub merchandise for a business venture.  Thereafter, Daboub received a statement from American Express with various charges from Four Seasons Farm.

The government also presented the testimony of Carlos Cruz, a network development manager at American Express.  Cruz testified that after the charges were made on the credit cards at

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 5

Four Seasons Farm, American Express would deposit money on the charges in Four Seasons Farm's bank account within three working days.

The director[4] of Security for Latin America and the Caribbean for American Express, Maria Marino ("Marino") also testified.  She stated that the charges on the various credit cards were unauthorized.  She further testified that American Express was unable to collect money from the credit card holders on the charges.

Jad Shalhout testified that he did not give Samad his credit card.  He denied swiping credit cards.  He also denied showing Samad how to conduct off-line transactions.  He testified that he did not check the bank statements for Four Seasons Farm.  He further testified that he did not check any of his credit card statements from American Express that American Express sent to him in the mail.

Saker Shalhout testified that he had possession of the cards.  He stated that the cards were cancelled and he left them on a shelf at his home.  He denied giving the credit cards to Samad.

As evidence of money laundering, at trial the government

---

[4] Marino testified that the director of security conducts investigations involving credit cards as well as traveler's checks.  (Tr. Day 1, 141, 142).

produced four checks, trial exhibits 26a, 26b, 14jj, and 14ll.

Exhibit 26a is a $17,000 check signed by Jad Shalhout.  The check

was drawn from the H&S Jewelers account, a jewelry store owned by

Jad Shalhout and Saker Shalhout.  That check was dated January

14, 2009, and was paid to the order of Raja Shalhout.  Exhibit

26b is a $17,000 check signed by Jad Shalhout. It was drawn from

the H&S Jewelers account.  That check was dated January 18, 2009,

and was paid to the order of Safe Shalhout.

Exhibit 14jj is a $17,500 check dated January 22, 2009, from

Four Seasons Farm to H&S Jewelers.  Exhibit 14ll is a $17,000

check dated January 23, 2009, from Four Seasons Farm to H&S

Jewelers.

The government notes that the checks in exhibits 14jj and

14ll were deposited and posted to Jad Shalhout's H&S Jewelers

bank account the same day that the checks in trial exhibits 26a

and 26b cleared.  (Gov. Opp. Mot. Acquit. 9).  The trial

testimony of Hugh Brown, a bank manager at the Bank of Nova

Scotia, supports this contention.  Looking at exhibits 14jj and

26a side by side at trial, Hugh Brown testified that the teller

stamp on exhibit 14jj indicated that the check was processed on

January 22, 2009. (Tr. Day 1, 239:12-25; 240:1-7).  He further

stated that the check from exhibit 26a posted on January 22,

2009. Looking at exhibits 14ll and 26b side by side, he testified

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 7

that exhibit 14ll was "negotiated or processed" on January 23,
2009. (Tr. Day 1, 240:15-16).  He also testified that 26b posted
on January 23, 2009. (Tr. Day 1, 240:10-24; 241:1-3).

On March 31, 2011, Jad Shalhout was convicted on one count
of conspiracy to commit wire fraud and two counts of money
laundering. Saker Shalhout was convicted on one count of
conspiracy to commit wire fraud and on forty-two counts of wire
fraud.

Jad Shalhout and Saker Shalhout now move for a judgment of
acquittal.

## II. DISCUSSION

A judgment of acquittal is appropriate under Fed. R. Crim.
P. 29 ("Rule 29") if, after reviewing the record in a light most
favorable to the prosecution, the Court determines that no
rational jury could find proof of guilt beyond a reasonable
doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006);
*see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)
(district court must "'review the record in the light most
favorable to the prosecution to determine whether any rational
trier of fact could have found proof of guilt beyond a reasonable
doubt based on the available evidence.'")(quoting *United States
v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 8

An insufficiency finding should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984) ("Our task is not to decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the fact finders was permissible.").

Further, the government may sustain its burden entirely through circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988).

## III. ANALYSIS

**A.    Wire Fraud: Counts Two through Forty-Three**

In Counts two through forty-three the Government charged Saker Shalhout with committing wire fraud in violation of 18 U.S.C. § 1343.  "To sustain a conviction under [18 U.S.C. § 1343], the record must show that the defendant (1) knowingly and willfully participated in a scheme or artifice to defraud, (2)

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 9

possessed a specific intent to defraud, and (3) used wire communications in interstate commerce, or reasonably foresaw that such wires would be used, in furtherance of the scheme." *United States v. Veras de los Santos*, 184 Fed. App'x. 245, 252 (3d Cir. 2006) (citing *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001)).  Although, Saker Shalhout moved for a judgment of acquittal at the end of trial, he has not briefed his argument as to acquittal on his wire fraud convictions.  Notwithstanding this, the Court will determine whether a reasonable jury could have found Saker Shalhout guilty on all 42 counts of wire fraud.

### 1. Knowingly and Willfully Participated in a Scheme or Artifice to Defraud

"'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir.1991)); *United States v. Maxwell*, 579 F.3d 1282, 1298 (11th Cir. 2009) ("A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property.")

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 10

"[T]he meaning of 'scheme to defraud' has been judicially defined . . . . Courts have defined the phrase broadly, allowing it to encompass deceptive schemes that do not fit the common-law definition of fraud." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).  Our definition "is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Gregory v. United States*, 253 F.2d 104, 109 (5th Cir. 1958).

Despite its breadth, the judicial definition is not limitless.  "[T]he word still signifies 'the deprivation of something of value by trick, deceit, chicane, or overreaching.' " *Pendergraft*, 297 F.3d at 1208-09 (quoting *Hammerschmidt*, 265 U.S. at 188, 44 S.Ct. at 512).

"A person's plan to convert funds to his personal use after representing they will be used for others constitutes a scheme to defraud." *United States v. Mack*, Nos. 08-5056, 10-6648, 2011 WL 5925314 (4th Cir. 2011)(citing *United States v. Hawkey*, 148 F.3d 920, 924 (8th Cir. 1998)). "The intent to repay eventually is irrelevant to the question of guilt for fraud." *Id*. (internal quotations omitted).

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 11

The evidence, taken in a light most favorable to the
government reveals that Saker Shalhout made numerous unauthorized
charges on cancelled American Express Cards.  The charges were
made at Four Seasons Farm grocery store.  Through his use of the
credit cards, Saker Shalhout misrepresented that Jad Shalhout,
Saker Shalhout, Manal Shalhout, and Kendy Javier, were buying
goods at Four Seasons Farms.  This caused American Express to
deposit the proceeds from the charges into the bank account of
Four Seasons Farms.  Thereafter, Samad forwarded the funds to
Saker Shalhout by writing checks to him from the Four Seasons
Farm bank account.

Based on these facts a reasonable jury could conclude that
Saker Shalhout knowingly and willfully participated in a scheme
to defraud.

## 2. Possessed a Specific Intent to Defraud

"Proof of intent to defraud is necessary to support
convictions for mail and wire fraud." *United States v. Bradley*,
644 F.3d 1213, 1239 (11th Cir. 2011).  "A jury may infer an
intent to defraud from the defendant's conduct." *United States v.
Maxwell* 579 F.3d 1282, 1301 (11th Cir. 2009).  "Evidence that a
defendant personally profited from a fraud may provide
circumstantial evidence of an intent to participate in that

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 12

fraud." *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir.

2011).  "The intent of the crime is shown by the scheme itself."

*United States v. Bruce*, 488 F.2d 1224 (5th Cir. 1973).

"To gauge a defendant's intent to commit a fraudulent

scheme, then, we must determine whether the defendant attempted

to obtain, by deceptive means, something to which he was not

entitled."  *United States v. Bradley*, 644 F.3d 1213, 1240 (11th

Cir. 2011).

Based on the evidence presented at trial, a rational jury

could infer that Saker Shalhout misrepresented to American

Express that the cancelled credit cards of Jad Shalhout, Saker

Shalhout, Kendy Javier, and Manal Shalhout were being used at

Four Seasons Farms to purchase goods.   Pursuant to Samad's

testimony, Saker Shalhout profited from this misrepresentation.

Accordingly, a  rational jury could infer an intent to defraud

from Saker Shalhout's conduct.

### 3. Used wire communications in interstate commerce, or reasonably foresaw that such wires would be used, in furtherance of the scheme

Based on Samad and Daboub's testimony it would be reasonable

for a jury to conclude that Saker Shalhout used communications in

interstate commerce or reasonably foresaw that such wires would

be used in furtherance of the scheme.

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 13

Indeed, a representative from JP Morgan Chase, Michael Thompson, testified to the wire transfers:

Q. And where is JP Morgan Chase Bank?
A. It's located in New York. Our head office is New York.
Q. And where is your duty station?
A. New York.
. . .
Q. Can you see that exhibit, sir?
A. Yes, I do.
Q. You have before you Government's Exhibit 11a. Can you tell us if you recognize that?
A. Yes, I do.
Q. What is that?
A. It's a spreadsheet of electronic transactions that processed through JP Morgan Chase.
Q. And what is, what is it in connection with?
A. It's in connection with automated clearing payments.
Q. For which client?
A. American Express.
Q. And does it relate to a specific merchant account?
A. Yes, it does.
Q. And what is the merchant account?
A. Four Season Farms.
Q. And does it relate to a bank account?
A. Yes, it does.
Q. And what is the bank account?
A. Banco Popular.
. . .
Q. What are they?
A. They're spreadsheets of wire or ACH transactions

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 14

     that were processed through JP Morgan Chase.

     . . .

     A. ACH, they are -- the acronym is Automated Clearing
     House or wire transfers for the lay term.

     Q. And --

     A. They were transported electronically or wire
     transfers.

(Tr. Day 2, 13:19-20:21 & 23:6)

     Viewing the evidence in the light most favorable to the
Government, there was substantial evidence that a jury could
reasonably conclude that Saker Shalhout knowingly and voluntarily
agreed to participate in a scheme to defraud American Express and
used interstate wires in furtherance of the scheme to defraud.
*See, e.g., Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir.
2007)(allegations of the use of a credit card was sufficient to
constitute wire fraud); *United States v. Drummond*, 255 F. App'x
60, 64-65 (6th Cir. 2007) (defendant who made reservations over
the internet using credit card issued to another sufficient to
support wire fraud conviction).

## B.  Counts Forty-Eight & Forty-Nine: Money Laundering

     Jad Shalhout was convicted on Counts 48 and 49 for money
laundering.  In his Rule 29 motion, Jad Shalhout argues that the
Court should grant his motion for a judgment of acquittal because

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 15

the  government failed to establish an intent to conceal.

The four elements of a money laundering offense include: "(1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) either an intent to promote the carrying on of specified unlawful activity or knowledge that the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." *United States v. Omoruyi,* 260 F.3d 291, 294-95 (3d Cir. 2001).

In *United States v. Posters 'N' Things, Ltd.*, 969 F.2d 652 (8th Cir.),*cert. granted*, 507 U.S. 971 (1993), Lana Christine Acty ("Acty") and Posters N' Things, Ltd., were convicted of a variety of offenses related to the sale of drug paraphernalia. Acty was also found guilty on two counts of money laundering pursuant to 18 U.S.C. § 1956(a).  On appeal, she argued that evidence was insufficient to support her conviction for laundering money, in violation of 18 U.S.C. § (a)(1)(B)(I). Specifically, she contended there was no evidence presented at trial to show that she concealed or disguised the proceeds from the Forbidden Fruit store.  The Eighth Circuit noted that "[t]he evidence is by no means overwhelming, but we disagree that it is

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 16

insufficient." *Id*. at 661.

Acty owned the Forbidden Fruit store.  In the Forbidden Fruit store, Acty sold both legal and illegal items.  The Forbidden Fruit store was mainly a cash business.  Acty deposited all of the money the store received into one bank account.  Acty failed to keep records to distinguish the proceeds from her legal business and illegal business.  As such, Acty commingled legitimate funds with illegitimate funds.  She would use funds from her bank account to purchase automobiles, retirement plans, art work, and other items.  Based on these facts, the United States Court of Appeals for the Eighth Circuit held that

> By conducting the financial end of her drug paraphernalia business in this way-commingling in one account, in an indistinguishable way, legitimate business receipts and illegitimate receipts- a reasonable juror could infer that Acty's actions were designed to disguise the nature or the source of the proceeds from her unlawful business.  If we had sat on the jury, we might not have convicted Acty for money laundering. But in reviewing her conviction on appeal, we are unable to hold that the jury's conclusion was unreasonable.[5]

*Posters 'N' Things, Ltd.*, 969 F.2d at 661.

---

[5] The Eighth Circuit distinguished Acty's case from *United States v. Sanders*, 928 F.2d 940 (10th Cir 1991).  In *Sanders*, the appellant purchased two automobiles from drug proceeds.  The Tenth Circuit held that the purchase was not a violation of section 1956(a)(1)(B)(I) because the transaction was not designed to conceal or disguise the source of the proceeds.  The Eighth Circuit found that Acty's case differed because, "not only were Acty's financial transactions in much larger amounts and over a much longer period of time, but one could infer from her record keeping and bank deposits and withdrawals that Acty designed her operation to conceal or disguise her illegal proceeds." *Posters 'N' Things, Ltd.*, 969 F.2d at 661 n.7.

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 17

In Count 48 Jad Shalhout was charged with money laundering proceeds in the amount of $17,000.  Count 49 charged Jad Shalhout with money laundering proceeds in the amount of $17,000.

As evidence of money laundering, at trial the government produced four checks, trial exhibits 26a, 26b, 14jj, and 14ll. The checks evidenced funds transfers from Four Seasons to H&S Jewelers. The funds were then transferred by Jad Shalhout from H&S Jewelers[6] to third parties.

Like *Acty*, the evidence of money laundering in this case is "by no means overwhelming."  But, given the way the funds were transferred from Four Seasons Farm to H&S Jewelers, and from H&S Jewelers to third parties, it would be reasonable for a jury to find that Jad Shalhout commingled illegitimate funds with legitimate funds with the intent to conceal.  *See generally*, *United States v. Naranjo*, 634 F.3d 1198, 1208 (11th Cir. 2011) ("This Court has provided a non-exhaustive list of examples of evidence that may support a finding that a defendant purposefully sought to conceal funds, which includes "[']structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction using third parties to

_____

[6] H&S Jewelers is a jewelry store owned by Saker Shalhout and Jad Shalhout.

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 18

conceal the real owner; [and] a series of unusual financial moves

cumulating in the transaction.[']"); *United States v. Termini*,

992 F.2d 879, (8th Cir. 1993) (rejecting defendant's contention

that the evidence of commingling of legal and illegal funds was

insufficient to support a jury finding of concealment).

Accordingly, the Court will not disturb the jury's verdict.

### C.   Conspiracy to Commit Wire Fraud: Count One

"Conspiracy is an inchoate offense, the essence of which is

an agreement to commit an unlawful act." *Iannelli v. Untied*

*States*, 420 U.S. 770, 777 (1975).  "To establish a conspiracy to

commit wire fraud, the government must prove (1) an agreement

between two or more persons (2) to execute a scheme to defraud

and (3) the use of either the mails or wire service in

furtherance of the scheme."  *United States v. Ross*, 131 F.3d 970,

981 (11th Cir. 1997); *see also*, *United States v. Fishman*, 645

F.3d 1175, 1186 (10th Cir. 2011)("(1) two or more persons agreed

to violate the law, (2) the defendant knew the essential

objectives of the conspiracy, (3) the defendant knowingly and

voluntarily participated in the conspiracy, and (4) the alleged

coconspirators were interdependent."); *United States v. Soteras*,

770 F.2d 641, 645 (7th Cir. 1985) ("In order to prove conspiracy

to commit the offense of wire fraud, the government must

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 19

establish that a defendant agreed to participate in a scheme to defraud in which it was reasonably foreseeable that an interstate wire facility would be used in furtherance of the scheme.").

The Shalhouts argue that the evidence at trial did not provide evidence of an agreement to commit an unlawful act.  They also contend that the evidence at trial failed to show proof of a specific intent to defraud.  The Court will address each argument in turn.

## 1. An agreement between two or more persons to execute a scheme to defraud

"The existence of an agreement may be proven by circumstantial evidence, including 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'"  *United States v. Shepkaru*, 191 Fed. App'x 893, 895 (11th Cir. 2006) (quoting *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005)); *United States v. Poole*, Civ. No. 10-4626, 2011 WL 5008522, (4th Cir. Oct. 20, 2011) ("Proof of a conspiracy may be shown by circumstantial evidence, including evidence of the existence of a 'tacit or mutual understanding' between the defendant and his accomplice.").

To prove the existence of an agreement to defraud American Express, the Government presented testimony of Samad.  Samad

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 20

testified that it was Jad Shalhout who showed Samad how to make off-line transactions using various credit cards.  Samad testified that Saker Shalhout provided Samad with cancelled credit cards to be used in the scheme. Samad testified that most of the time he and Saker Shalhout would make charges on the credit cards.

Jamil Daboub also testified to sending Saker Shalhout his wife's credit card.  Daboub stated that after sending the card to Saker Shalhout, he received a credit card statement with several thousand dollars in charges.  The charges were made at Four Seasons Farm.

Jad Shalhout argues that Samad's testimony did not provide evidence of an agreement to steal money, but to "borrow" money and pay it back.  In essence, Jad Shalhout contends that there was no manifest agreement to break the law.

A manifest agreement to break the law is not required to violate the law.  Notably, the very nature of the crime of conspiracy is such that it may be established only by indirect and circumstantial evidence.  Because "[s]ecrecy and concealment are essential features of [a] successful conspiracy," the law "rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 21

plan and their connections with it, without requiring evidence of
knowledge of all its details or of the participation of others."
*Blumenthal v. United States*, 332 U.S. 539, 557 (1947).  Thus,
"[t]he existence of a conspiracy 'can be inferred from evidence
of related facts and circumstances from which it appears as a
reasonable and logical inference, that the activities of the
participants . . . could not have been carried on except as the
result of a preconceived scheme or common understanding.'" *United
States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).

Based on the foregoing testimony a reasonable jury could
conclude that Jad Shalhout, Samad, and Saker Shalhout agreed to
defraud American Express.

## 2. Specific Intent

The Shalhouts further argue that not only did the government
fail to meet its burden of proving the existence of an agreement,
but it also failed to meet its burden of proving specific intent
to defraud under 18 U.S.C. § 1343.

"Proof of specific intent to use the mails or wire service
is not required to show conspiracy to commit mail or wire fraud."
*United States v. Ross*, 131 F.3d at 981.  "The government's burden
. . . is to demonstrate beyond a reasonable doubt that [the
defendants] agreed to engage in a scheme to defraud in which they

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 22

contemplated that the mails [or wire service] would likely be

used." *United States v. Massey*, 827 F.2d 995, 1002 (5th Cir.

1987); *United States v. Berdize*, 415 Fed. App'x 320, 326 (2nd

Cir. 2011) ("Both the existence of a conspiracy and a defendant's

participation in it with the requisite knowledge and criminal

intent may be established through circumstantial evidence,

provided it is sufficient to prove these elements beyond a

reasonable doubt.").

Samad's testimony, coupled with the other evidence produced

at trial, supported the jury's finding of a conspiracy to commit

wire fraud because it is "'evidence of related facts and

circumstances from which it appears as a reasonable and logical

inference, that the activities of the participants . . . could

not have been carried on except as the result of a preconceived

scheme or common understanding.'" *United States v. Kapp*, 781 F.2d

1008, 1010 (3d Cir. 1986) (quoting *United States v. Ellis*, 595

F.2d 154, 160 (3d Cir. 1979)).

### 3. The use of either the mails or wire service in furtherance of the scheme

Moreover, the Court notes that the evidence at trial

established that the Shalhouts used the wire service to further

their scheme to defraud.  At trial, the Government established

that American Express credit cards were used at Four Seasons

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 23

Farms to conduct off-line transactions by bypassing the credit
authorization system of American Express.  Credit card
transmissions constitute wire transfers.  *See, e.g.*, *Odom v.
Microsoft Corp*., 486 F.3d 541, 554 (9th Cir. 2007)(allegations of
the use of a credit card sufficient to constitute wire fraud);
*United States v. Drummond*, 255 F. App'x 60, 64-65 (6th Cir. 2007)
(defendant who made reservations over the internet using credit
card issued to another sufficient to support wire fraud
conviction).  Without the credit card wire transfers the scheme
would not have been complete. Viewing the evidence in the light
most favorable to the Government a reasonable jury could conclude
that Jad Shalhout and Saker Shalhout used the wire service in
furtherance of the scheme to defraud American Express.

     This case presents circumstances remarkably close to those
in *United States v. Akpan,* 396 Fed. App'x 88 (5th Cir. 2010).

      In that case, Ignatuis Akpan ("Akpan") was convicted on one
count of conspiracy to commit wire fraud, in violation of 18
U.S.C. § 1349 and eight counts of wire fraud, in violation of 18
U.S.C. §§ 1343  On appeal, Akpan argued that the evidence was
insufficient to show that he knew about James Yarclay's
("Yarclay") misrepresentations to American Express and that he
willfully agreed with Yarclay to intentionally defraud American

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 24

Express.

The Fifth Circuit held that Akpan, the owner of Union

Communication and Utilities Corporation (UCUC) and Yarclay, the

owner of Universal Internet Concepts, Inc. (UICI), devised a

scheme to defraud American Express.  The Court stated that the

testimony at trial established that Akpan charged UICI's American

Express corporate account for approximately $664,360 in eight

separate transactions in March and April of 2004, that American

Express transferred $648,082 to Akpan's bank account based on the

charges, and that Akpan eventually transferred a total of

$319,000 to Yarclay.

> The Fifth Circuit noted that
> [t]he jury heard testimony that Akpan inflated UICI's
> checking account balances by depositing a series of
> worthless checks, that both Akpan and Yarclay called
> American Express numerous times to request approval for
> charges that exceeded UICI's credit limit, that Akpan failed
> to produce any documents or other evidence to the Government
> to substantiate the charges to UICI's American Express
> account and that Akpan gave inconsistent explanations to
> investigators for the charges.

*Id*. at 90.

The Fifth Circuit held that the evidence presented at trial

was sufficient to support Akpan's conviction for conspiracy to

commit wire fraud.

The evidence adduced at trial is as, if not more, compelling

*USA v. Shalhout*
Criminal No.  2010-53
Memorandum Opinion
Page 25

than that in *Akpan*.  Indeed, viewing the evidence here in the

light most favorable to the Government, a reasonable jury could

conclude that the Shalhouts conspired to commit wire fraud.

Accordingly, the Court will not disturb the jury's verdict.


                                        S_____

                                          **CURTIS V. GÓMEZ**

                                           **Chief Judge**